# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

GENERAL GEORGE SMALLS,           )
                                      )
        Plaintiff,                            )
                                        )
v.                                               )           Case No.   CV414-031
                                        )
STATE BOARD OF PARDONS           )
AND PAROLES, *et al.*,                      )
                                        )
        Defendants.                        )

## REPORT AND RECOMMENDATION

Proceeding *pro se*, General George Smalls brought this 42 U.S.C. §

1983 case against the Georgia State Board of Pardons and Paroles, the

Georgia Department of Corrections, the Chatham County Sheriff's

Department, and the Superior Court of Chatham County.   Doc. 1.

Though he was an inmate when he filed this case, he is not now.[1]   He

---

[1]   Before he left prison, he completed and filed here just one of the two *in forma pauperis* (IFP) forms that this Court had demanded.   Docs. 2, 5 (completed Consent Form).   He or someone on his behalf filed a blank "Prison Trust Fund Account" form, doc. 6, though he may be blameless for that noncompliance given his reliance on prison officials to timely complete it for him in time to file it.

As is discussed in Part F *infra*, that particular filing obligation is now moot.   For jurisdictional purposes only, the Court construes his IFP filings as a "free-world" resubmission and conditionally grants it.   In any event, the Court will now screen his

alleges that upon his September 28, 2011 release from a transitional facility, the State Board of Pardons and Paroles made him register as a sex offender even though he had never been convicted of a sex crime. Doc. 1 at 5; *see also* Smalls' Georgia Department of Corrections criminal history (attached) (no sex crimes listed). His attorney informed a prosecutor of this. Yet, plaintiff claims, "my photo was posted on the sex offender Web Site, Newspapers and Television. The statements [were] false and damag[ing] and wrong and pain[ful] and damag[ing] to me!" Doc. 1 at 5.

## A. "John Doe"

Smalls says he does not know the individuals responsible for damaging him like that, but he intends to find out through discovery. Doc. 1 at 5. That apparently is why it made sense to him to nominally

---

case under 28 U.S.C. § 1915(e)(2)(B)(ii), which allows a district court to dismiss *sua sponte,* and prior to service of process, an IFP plaintiff's complaint that fails to state a claim for relief. To that end, the Fed. R. Civ. P. 12(b)(6) dismissal standards apply here. *Leal v. Ga. Dep't of Corrs.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). Allegations in the complaint are thus viewed as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n. 1 (11th Cir. 2011).

But conclusory allegations fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a 12(b)(6) dismissal). "[T]he pleading standard [Fed. R. Civ. P.] 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (*pro se* pleadings are still construed liberally after *Iqbal*).

sue entities otherwise immune from money damages under the Eleventh Amendment,[2] if not incapable of being sued under Fed. R. Civ. P. 17.[3]  In any event he wants his name cleared, and to "make the public aware of the mistakes [the defendants] made, and pay [him damages] in the amount of three million dollars."  Doc. 1 at 6.  One option is to grant Smalls leave to replace these defendants with a John Doe defendant.[4]

---

[2]  That includes the State Board of Pardons and Paroles and the Georgia Department of Corrections.  Doc. 1 at 1.  *See, e.g., Watson v. Division of Child Support Services*, 2014 WL 1140819 at * 2 (11th Cir. Mar. 24, 2014) (African American's § 1983 lawsuit against state agency, alleging his equal protection rights were violated when one of the agency's case agents made racially-tinged derogatory statements, was barred by Eleventh Amendment immunity).  These defendants must be dismissed on these grounds.

[3]  The Chatham County Sheriff's Department (*see* doc. 1 at 1) is "not a legal entity capable of being sued."  *Smith v. Chatham County Sheriff's Dept.*, 2012 WL 5463898 at *2 (S.D. Ga. Oct. 22, 2012); *see also Caffey v. Mobile Police Dept.*, 2013 WL 4052430 at * 1 (S.D. Ala. Aug. 12, 2013) (police department is not an entity capable of being sued) (applying *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit. . . .").  The same must be said for the Superior Court of Chatham County. These defendants must be dismissed on these grounds.

[4]  Smalls, proceeding *pro se*, may be said to have in substance pled that result.  Even if given a chance to run with the John Doe option, he would still be required to do his own legal research on the particulars.  *Mendenhall v. Blackmun*, 456 F. App'x 849, 851-52 (11th Cir. 2012) ("We show leniency to *pro se* litigants, but we will not serve as *de facto* counsel or rewrite a pleading in order to sustain an action.").

The Court will note, for that matter, that actions "against Doe defendants are usually permissible only against real but unidentified defendants[,] and the court may dismiss an action against a Doe defendant if it does not appear that the true identity of the Doe defendant can be determined."  Ann., 139 A.L.R. FED. 553 (*Propriety of Use of*

## B. "Stigma-Plus"

There are other flaws in Smalls' case, and one is revealed while examining the law behind his claim. The case law shows that other § 1983 litigants have fought reputation-destroying, government designations by advancing "stigma-plus" procedural due process theories. *See, e.g., Worrell v. City of New York*, 2014 WL 1224257 at * 4 (E.D.N.Y. Mar. 24, 2014) (applying *Paul v. Davis*, 424 U.S. 693, 708-09, (1976)); *Thomas v. Buckner*, 2012 WL 3978671 at * 3 (M.D. Ala. Sep. 11, 2012). Variations exist,[5] but all share this bottom line: It is not enough to allege

---

*Fictitious Name of Defendant in Federal District Court*) (1997); *Millbrook v. United States*, 2014 WL 1235778 at * 4 (M.D. Pa. Mar. 25, 2014) (John/Jane Doe defendants may only be allowed to stand in for the alleged real parties until discovery permits the intended defendants to be installed)*; Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D.Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

[5]  In substance Smalls' allegations are similar to those described here:

Plaintiff does not expressly state in Count One of his complaint that he has asserted a so-called "stigma-plus" defamation claim. However, he alleges that as a result of defendants' conduct, he has "suffered public humiliation, damage to his reputation, loss of employment, personal associations, and the benefits of liberty" -- the damages typically associated with a "stigma-plus" defamation claim. Moreover, he states in his opening brief that the issue on appeal is whether he has "plausibly alleged that he was subjected to 'stigma plus' defamation." Accordingly, we will treat plaintiff's procedural due process claim alleged in Count One as a claim for "stigma-plus" defamation, not as a due process claim predicated solely on the violation of a state-created liberty interest. *Cf. Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010) (analyzing under

4

only reputational damage (stigma).

How this area of law evolved shows why. "Concerned that a potential flood of federal litigation would arise if a state defamation case could be converted into an action for loss of liberty under the Due Process Clause, the Court in *Paul* concluded that stigma alone is not actionable." Carpenter & Beverlin, *The Evolution of Unconstitutionality in Sex Offender Registration Laws*, 63 HASTINGS L.J. 1071, 1126 (2012). "And so was born the concept of 'stigma plus,' which demands not only proof of injury to one's reputation, but also that the injury was accompanied by the denial or curtailment of a tangible interest." *Id.* (footnote omitted).

## C. Pleading the "Plus" Factor

Pleading the "Plus" factor is not as straightforward as it seems. "Although numerous cases pay homage to the 'plus' part of the stigma-plus test, courts have also acknowledged that outside *Paul's* limited context, it is not entirely clear what the 'plus' is." *Evolution*, 63 HASTINGS L.J. at 1126 (quotes and footnote omitted).

---

§ 1983 both a stigma-plus defamation claim and a due process claim arising from the deprivation of a state-created liberty interest).

*Balentine v. Tremblay*, 2014 WL 519653 at * 2 n. 1 (2d Cir. Feb. 11, 2014).

Where loss of reputation is alleged, litigation centers on whether the stigmatizing statements produce an additional state-imposed burden. Courts following *Paul* have narrowly interpreted this requirement, thus rejecting stigma-plus challenges where there was insufficient proof of an additional burden. Consequently, claims have been dismissed involving loss of goodwill; termination of at-will employment; removal from a bankruptcy panel; a prohibition against adopting a child, which resulted from the defamation; and where a "name-clearing hearing" was later held.

*Id.* at 1127 (footnotes omitted); *compare Balentine*, 2014 WL 519653 at * 3 ("plus" can be shown by the loss of the right to purchase alcohol; foreclosure of the freedom to take advantage of government employment; the extinguishment of the right to public education; the deprivation of a plaintiff's property, and the termination of government employment).

Here Smalls alleges reputational damage (stigma), but no "plus" factor. He has failed to plead facts showing that "a right or status previously recognized by state law was distinctly altered or extinguished." *Paul*, 424 U.S. at 711. And as was explained in a similar (this time involving a child-abuse registry) case,

the "plus" element is not satisfied simply because a person is the subject of an investigation *or even listed* on a child abuse registry. *See, e .g., Behrens v. Regier*, 422 F.3d 1255, 1260–61 (11th Cir. 2005) (acknowledging that inclusion on the child abuse registry was stigmatizing, but affirming the district court's dismissal of plaintiff's "stigma plus" claim because state law did not recognize any right to

adopt an unrelated child, which was plaintiff's alleged "plus"); *Miller v. California*, 355 F.3d 1172, 1178–79 (9th Cir. 2004) (recognizing that plaintiffs identified a triable issue of fact regarding whether being falsely listed as a suspected child abuser was defamatory, but denying plaintiffs' "stigma plus" claim because plaintiffs experienced no change in legal status following the listing); *Glasford v. N.Y. State Dep't of Soc. Servs.*, 787 F. Supp. 384, 388 (S.D.N.Y.1992) (dismissing plaintiff's "stigma plus" claim, explaining that the "complaint ... does not allege that plaintiff's employment prospects suffered as a result of the report in the [child abuse register]").

*Wright v. Yacovone*, 2014 WL 1165834 at * 9 (D. Vt. Mar. 21, 2014) (emphasis added); *see also Balentine*, 2014 WL 519653 at *3 (ruling that a purported denial of process is not a "plus," and rejecting the plaintiff's attempt to bootstrap his complaint by relying on the denial of a notice and a hearing for both the denial of procedural guarantees and the deprivation of his liberty or property right).

Even if the Court were to grant Smalls a second chance to plead his case, his "plus" prospects here seem dim. The attached Georgia Department of Corrections print-out shows that he left prison on February 28, 2014, ten days after he signed in his Complaint. Doc. 1 at 6. And he has been in and out of prison since 1982. DOC record at 2. Like Smalls, the plaintiff in *Balentine* was also listed in a publicly accessible a

state sex offender registry. He sued under § 1983 and lost, in no small part because "his alleged reputational damage resulting in the loss of private employment, humiliation, and embarrassment are inadequate to satisfy the 'plus' requirement." *Balentine*, 2014 WL 519653 at * 3.

Smalls' case may well be headed for the same result. But where a *pro se* litigant reasonably might hold the missing building block to a claim, yet for want of legal training or inarticulateness has simply failed to plead it, a "second-chance" amendment is warranted.[6] Within 30 days of the date this Order is served, then, Smalls may file an Amended Complaint containing those building blocks (i.e., the "plus" factor and proper "John Doe" pleading), or face a recommendation of dismissal with prejudice.

## D. Statute of Limitations

Other problems must be addressed. Smalls does not say if or when the stigmatizing action ended. That's important because if it ended more than two years ago, his claim may be time-barred. *See Brantley v.*

---

[6] *See Langlois v. Traveler's Ins. Co.*, 401 F. App'x 425, 426-27 (11th Cir. 2010) (even though IFP's litigant's *pro se* complaint failed to state basis for federal jurisdiction and failed to state a claim, and she failed to seek leave to amend her complaint, nevertheless she should have been afforded an opportunity to amend deficiencies prior to dismissal, where no undue time had elapsed, no undue prejudice could be shown, and the record revealed some potential claim-resuscitation).

*Muscogee County School Dist.*, 535 F. App'x 912, 914-15 (11th Cir. 2013) (school district's plant services and custodial employees, who knew they were denied access to school district's more generous retirement system and believed it to be racially motivated more than four years before filing their racial discrimination claims under 42 U.S.C. §§ 1981 and 1983, had actual knowledge of the facts supporting their claims well outside of the statutory limitations periods, which accrued under § 1983 when facts that would support a cause of action would be or should have been apparent to a reasonably prudent person, and under § 1981 when plaintiffs should reasonably have discovered the alleged violations). Hence, plaintiff must plead time-reference points in his Amended Complaint, including whether he is still on the Sex Offender registry. (The Court's own search of it shows that he is not. *See* http://state.sor.gbi.ga.gov/SearchOffender.aspx (site visited May 8, 2014).)

## E.  PLRA Filing Fee[7]

That brings the Court to plaintiff's $350 filing fee.[8]  Does the PLRA's fee-payment component apply?  It did when the Court granted Smalls leave to file this case IFP, and thus got on the PLRA's "installment plan" for paying that fee.  8 FED. PROC., L. ED. § 20:393 (Mar. 2014) (The PLRA "applies exclusively to prisoners and requires that fees be assessed against an *in forma pauperis* litigant *at the moment* the action or appeal is filed, regardless of whether the action or appeal is later dismissed.").  The PLRA, however, fails to say what happens when the plaintiff files his case while a prisoner but is released before his prison account, which he

---

[7]  Smalls indicated (doc. 1 at 3) that his prison had a claim-exhaustion procedure but he did not invoke it under the Prison Litigation Reform Act (PLRA).  42 U.S.C. § 1997e(a).  The PLRA does not apply, courts have held, to inmates who wait until *after* they are released to file their prison conditions case.  *Lesesne v. Doe*, 712 F.3d 584, 589 (D.C. Cir. 2013); *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005). Smalls was still a prisoner when he filed this case, though he was released just 10 days after he signed his Complaint.  Yet, he is not suing about any prison condition, so exhaustion is not required.  42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to *prison conditions* under section 1983 ... by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies are exhausted.") (emphasis added).

[8]  The filing fee is $400 -- the $350.00 statutory fee per 28 U.S.C. § 1914(a), plus the additional $50.00 administrative fee adopted by the Judicial Conference under § 1914(b).  *Fanning v. Wegco, Inc.*, ___ F. Supp. 2d ___, 2013 WL 6098404 at * 4 n. 4 (D.D.C. Nov. 21, 2013).  But those granted IFP status under 28 U.S.C. § 1915 are exempt from the latter.  *Hwang Woojin v. Head Administrator (Warden)*, 2014 WL 1155430 at * 1 (D.N.J. Mar. 21, 2014); *Polston v. Mississippi County Judge*, 2013 WL 6836867 at * 1 n. 1 (E.D. Ark. Dec. 24, 2013).

obviously will no longer fund, can be tapped. And whether it applies is pivotal because "[t]he process for a non-incarcerated indigent litigant is different: if the court grants a motion to proceed IFP, the litigant does not have to pay the full amount of the filing fees." *Carson v. Tulsa Police Dept.*, 266 F. App'x 763, 766 (10th Cir. 2008).

In contrast, the PLRA places each inmate on the hook for the full fee, though payments may be stretched out on an installment-payment basis. *Lucien v. DeTella*, 141 F.3d 773, 775 (7th Cir. 1998) ("All § 1915 has ever done is excuse pre-payment of the docket fees; a litigant remains liable for them, and for other costs, although poverty may make collection impossible.") (quotes and cites omitted); *Hobbs v. El Paso County*, 2008 WL 2787246 at *3 (D. Colo. (IFP "status merely defers, but does not permanently excuse, the payment of filing fees.) (quotes and cite omitted); 28 U.S.C. § 1915(b)(2) (requiring each prisoner to "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.").

Courts are divided over the whether the PLRA payment obligation travels with the prisoner upon his release. *See Carson*, 266 F. App'x at

766-67; *see also* 3 RIGHTS OF PRISONERS § 17:1 n. 5 (4th ed. Oct. 2013) (citing "Julia Colarusso, comment, *Out of Jail ... But Still Not Free to Litigate? Using Congressional Intent to Interpret 28 U.S.C. § 1915(b)'s Application to Released Prisoners,* 58 AM. U. L. REV. 1533 (2009) (the circuits are split on the question, with some holding an ex-inmate liable for the balance, while others say to waive the fee).   Nor has the Eleventh Circuit spoken to this issue.

This Court concludes that the PLRA applies and thus requires Smalls to pay the $350 fee to the extent he would have been liable for it up to the date of his release.   If inmates released after filing their case remain subject to PLRA's "physical injury" requirement, *Harris v. Garner*, 216 F.3d 970, 973-76 (11th Cir. 2000) (en banc), then they rightly should remain subject to PLRA's payment requirement.   *Harris*, for that matter, cited Fifth and Seventh Circuit cases applying PLRA's fee requirement to prisoners released while their civil cases were still pending.   *Id.* at 975-76; *see also Rogers v. Kerns*, 2010 WL 376824 at * 1 (N.D. Fla. Jan. 25, 2010) ("Fees are not refundable, regardless of dismissal of the action. [The obligation to pay the full amount of the filing fee

continues even if Plaintiff is released from prison.]") (brackets original).[9]

Normally, then, the Court would compute plaintiff's accrued PLRA debt and direct him to submit a new financial affidavit showing what payments he can make, and also to show whether he qualifies for non-inmate IFP status for the balance of his fee. *See Perrey v. Donahue*, 2007 WL 1058232 at * 1 (N.D. Ind. Apr. 4, 2007) (plaintiff allowed to proceed without making further payments on the filing fee after he filed another petition to proceed IFP as a nonprisoner). The Court would then craft a payment-plan directive. But given the short incarceration period involved, the PLRA-debt amount at most would be *de minimis* and thus not worth the judicial resources to collect it. So, within the same 30-day period, the Court directs Smalls to tender a new, non-PLRA IFP affidavit and show why the Court should waive the $350 fee outright, a requirement imposed upon all non-inmate IFP litigants.

---

[9] As the partial concurrence/dissent in *Harris* reasons:

> It is reasonable to require former prisoners to meet past due obligations that constitute a condition precedent to their ability to bring suit, even after they have been released from custody. The full payment provision of section 1915(b)(1) is not being applied to them as former prisoners, but as persons who have incurred a debt that has not yet been satisfied.

216 F.3d at 991 n. 8.

## G. Conclusion

Within 30 days of the date this Order is served, General George Smalls shall comply with the above financial directive. The Clerk shall include a non-prisoner IFP form when serving plaintiff with his copy of this ruling. Smalls must also amend his Complaint to address the "John Doe" designations, as well as the "plus" and time-period factors discussed above. In the meantime, all of the defendants should be **DISMISSED**, with leave granted to plaintiff to add a John Doe defendant.

**SO REPORTED AND RECOMMENDED** this 14ᵀᴴ day of May, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

Official Portal for the State of Georgia
Georgia Governor Nathan Deal

# Georgia Department
# of Corrections

• Find an Offender
• Find a Facility
• Send Money
Home
About GDC▽
Divisions▽
Offender Information▽
Community Services▽
News▽
Reports▽
GDC Jobs
GA Sex Offender Registry

☐ SHARE ⬛📘🐦✉️   ★ Translate Search: [      ] 🔍
TEXT

## Find an Offender

Click here to start over | Return to previous screen

The following represents the most recent information for this offender in our website database. However, this information is not delivered in "real time", and there may have been recent changes that are not displayed below. If you have questions, or find the below information incorrect, please contact/email us by clicking this link. Once you click the link, please select the category *'Information about a specific Offender/Transfers/County Jail Pick-up'*

**SMALLS, GENERAL GEORGE**
GDC ID: 0000194907



**PHYSICAL DESCRIPTION**
| | |
|---|---|
| **YOB:** | 1959 |
| **RACE:** | BLACK |
| **GENDER:** | MALE |
| **HEIGHT:** | 5'09" |
| **WEIGHT:** | 235 |
| **EYE COLOR:** | BROWN |
| **HAIR COLOR:** | BLACK |

**SCARS, MARKS, TATTOOS**

**INCARCERATION DETAILS**
| | |
|---|---|
| **MAJOR OFFENSE:** | FALSE IMPRISONMENT |
| **MOST RECENT INSTITUTION:** | CENTRAL STATE PRISON |
| **MAX POSSIBLE RELEASE DATE:** | 02/28/2014 Important Release Information |
| | For parole information please go to Georgia State Board of Pardons and |

Paroles website.

| | |
|---|---|
| **ACTUAL RELEASE DATE:** | 02/28/2014 |
| **CURRENT STATUS:** | INACTIVE |

**KNOWN ALIASES**
| | |
|---|---|
| **A.K.A.** | DOE,JOHN |
| **A.K.A.** | SMALL,GENERAL |
| **A.K.A.** | SMALLS,GENERAL |
| **A.K.A.** | SMALLS,GENERAL G |
| **A.K.A.** | SMALLS,GENERAL GEORGE |
| **A.K.A.** | SMALLS,GEORGE |

**STATE OF GEORGIA - CURRENT SENTENCES**

**CASE NO:** 331165
**OFFENSE:** crmnl trespassing
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/25/1998
**SENTENCE LENGTH:** 0 YEARS, 12 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** OBSTR OF LAW ENF OFFICER
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/25/1998
**SENTENCE LENGTH:** 5 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** OBSTR OF LAW ENF OFFICER
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/25/1998
**SENTENCE LENGTH:** 5 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** FALSE IMPRISONMENT
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/25/1998
**SENTENCE LENGTH:** 10 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** POSS OF MARIJUANA
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 02/12/1998
**SENTENCE LENGTH:** 2 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** OBSTR OF LAW ENF OFFICER
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/01/1994
**SENTENCE LENGTH:** 5 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** POSS OF COCAINE
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/01/1994
**SENTENCE LENGTH:** 20 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** viol motor veh law
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 03/01/1994
**SENTENCE LENGTH:** 0 YEARS, 12 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** viol motor veh law
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 02/12/1994
**SENTENCE LENGTH:** 0 YEARS, 12 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** cpwl & concealed weapon
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 02/12/1994
**SENTENCE LENGTH:** 0 YEARS, 12 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** POSS FIREARM CONVCT FELON
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 02/12/1994
**SENTENCE LENGTH:** 5 YEARS, 0 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** viol motor veh law
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 02/09/1994
**SENTENCE LENGTH:** 0 YEARS, 12 MONTHS, 0 DAYS

**CASE NO:** 331165
**OFFENSE:** POSS OF MARIJUANA
**CONVICTION COUNTY:** CHATHAM COUNTY
**CRIME COMMIT DATE:** 02/09/1994
**SENTENCE LENGTH:** 10 YEARS, 0 MONTHS, 0 DAYS

STATE OF GEORGIA - PRIOR SENTENCES

STATE OF GEORGIA - INCARCERATION HISTORY

**INCARCERATION BEGIN  INCARCERATION END**

| INCARCERATION BEGIN | INCARCERATION END |
|---|---|
| 05/30/2013 | 02/28/2014 |
| 01/06/1999 | 09/28/2011 |
| 07/20/1994 | 12/02/1997 |
| 12/22/1989 | 02/01/1991 |
| 07/15/1988 | 10/17/1988 |
| 01/04/1984 | 12/03/1985 |
| 05/10/1982 | 05/04/1983 |